# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

|  |  |
|---|---|
| MICHAEL ROBERTS AND ANNETTE ROBERTS,<br>        Plaintiffs,<br><br>        v.<br><br>AMICA MUTUAL INSURANCE COMPANY,<br>        Defendant. | No. 3:14-cv-1589 (SRU) |

## RULING ON PLAINTIFFS' MOTION FOR RECONSIDERATION[1]

### I.      Background

Plaintiffs, Michael and Annette Roberts ("the Roberts"), are homeowners in Connecticut

who purchased a homeowner's insurance policy from the defendant, Amica Mutual Insurance

Company ("Amica").  On October 27, 2014, the Roberts brought this declaratory judgment

action against Amica, asking the court to require Amica to indemnify them for damage to the

basement walls of their home.  The damage was caused by defective concrete supplied by J.J.

Mottes Company.  Plaintiffs allege that the defective concrete caused the basement walls to

crack, rendering the home structurally unsound.  The only way to remedy the condition is to

completely remove and replace the affected walls.

On March 13, 2015, Amica filed a motion to dismiss, which contested coverage on the

policy and argued that the insurance claim was time-barred.  The parties agreed that the Roberts

were required, under the insurance contract, to "start" any lawsuit against Amica within two

---

[1] Although the Roberts' motion (doc. # 27) was brought as a motion for reconsideration, I am treating it as an opposition to Amica's motion to dismiss (doc. # 10) because the Roberts did not have the opportunity to fully brief the contractual suit limitations issue at the time I granted Amica's motion to dismiss on August 13, 2015. Accordingly, though I am ruling on the Roberts' motion for reconsideration, I am reviewing the matter *de novo* as if I were considering the merits of a motion to dismiss, and applying the familiar standard governing motions to dismiss.

years of the date of the loss.[2]  The parties also agreed, for the purposes of the motion to dismiss, that the Roberts first discovered the defect in their basement walls in either late October or the beginning of November 2012.  It is undisputed that the Roberts filed their complaint in the instant action on October 27, 2014 and served Amica with a summons and the complaint on February 20, 2015.

While the motion to dismiss was pending, Amica formally denied the claim for coverage. That prompted the Roberts to seek leave to amend their complaint to include claims of breach of contract, breach of the implied covenant of good faith and fair dealing, and violations of the Connecticut Unfair Insurance Practices Act ("CUIPA") through a private right of action conferred by the Connecticut Unfair Trade Practices Act ("CUTPA").

On August 13, 2015, ruling from the bench, I granted Amica's motion to dismiss, holding that the matter was time-barred due to the Roberts' failure to "start" an action against Amica within the insurance contract's contractual suit limitations period.[3]  I held that Connecticut law governed the interpretation of the term "started" in the insurance contract.  In Connecticut, a lawsuit is not commenced until the opposing party is served with the complaint.  *Rocco v. Garrison*, 268 Conn. 541, 553 (2004).  Thus, in Connecticut, beneficiaries of Amica's homeowners' policy must file a complaint and serve process on Amica within two years of discovering the defect that gave rise to their claim.  Because the Roberts did not serve Amica until February 20, 2015, approximately two years and five months after discovering the defect, I held that the insurance claim was time-barred.

---

[2] The Roberts actually had two separate insurance policies issued by Amica.  The first policy, which was in force from August 28, 1999 through August 28, 2006, is not at issue because it contained a one-year contractual suit limitation that had expired by the time the Roberts filed the instant complaint.  Regardless of whether a suit is "started" at the filing of the complaint or when the opposing party is served, any claim under the first policy is time-barred because the complaint was filed much more than a year after discovery of the defect.  Thus, the only policy at issue is the August 28, 2006 through August 28, 2008 policy because it had a two-year contractual suit limitation.

[3] The contractual suit provision ("Suits Against Us" provision) states: "No action can be brought against us unless . . . the action is started within two years after the date of loss."  Pl.'s Ex. A at 15.

At the same hearing, I denied the Roberts' motion to amend.  I held the proposed amendments to the complaint would have been futile, given the fact that the Roberts' claims were time-barred by the contractual suit limitation ("Suits Against Us") provision.

On August 27, 2015, the Roberts filed the instant motion for reconsideration (doc. # 27). In support of their motion, the Roberts argue that language in Amica's Suits Against Us provision is ambiguous.  Specifically, they urge the court to hold that the term "started" in the insurance contract is ambiguous.  Because the Roberts are the insureds, they argue that the court must construe the term "started" in the light most favorable to them.  The Roberts cite to Federal Rule of Civil Procedure 3 in support of their interpretation that the term "started" in the Suits Against Us provision is synonymous with the filing of a complaint in federal court. Accordingly, they assert that the court should deem the instant suit timely—or permit a jury to make such a finding—because the suit was properly commenced when the complaint was filed on October 27, 2014.  For the reasons set forth below, I deny the Roberts' motion for reconsideration and hold that their claims are time-barred by the Suits Against Us provision of the insurance contract.

## II.    Standard of Review

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) is designed "merely to assess the legal feasibility of a complaint, not to assay the weight of evidence which might be offered in support thereof."  *Ryder Energy Distribution Corp. v. Merrill Lynch Commodities, Inc.*, 748 F.2d 774, 779 (2d Cir. 1984) (quoting *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980)).

When deciding a motion to dismiss pursuant to Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true, draw all reasonable inferences in favor of the

plaintiffs, and decide whether it is plausible that plaintiffs have a valid claim for relief.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007); *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996).

Under *Twombly*, "[f]actual allegations must be enough to raise a right to relief above the speculative level," and assert a cause of action with enough heft to show entitlement to relief and "enough facts to state a claim to relief that is plausible on its face."  550 U.S. at 555, 570; *see also Iqbal*, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").  The plausibility standard set forth in *Twombly* and *Iqbal* obligates the plaintiff to "provide the grounds of his entitlement to relief" through more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action."  *Twombly*, 550 U.S. at 555 (quotation marks omitted).  Plausibility at the pleading stage is nonetheless distinct from probability, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the claims] is improbable, and . . . recovery is very remote and unlikely."  *Id.* at 556 (quotation marks omitted).

## III.    Discussion

Amica argues that the complaint should be dismissed because the Roberts failed to comply with the insurance policy's Suits Against Us provision, which required any action against Amica to be "started within two years after the date of loss."  *See* Pl.'s Ex. A at 15, *Roberts, et al. v. Amica Mutual Ins. Co.*, No. 3:14-cv-1589 (SRU), ECF No. 27-2.  The parties agree that the "date of loss" occurred sometime in late October or early November 2012, the Roberts filed the complaint on October 27, 2014, and they served Amica on February 20, 2015.  Accordingly, this motion turns on whether the filing of the action in federal court "started" the

action or instead whether the service of process on Amica did so.  If the instant action is deemed "started" at the time Amica was served, the parties agree that the instant action is time-barred.

Because this is a diversity suit based on a state law contract action, the court must apply Connecticut substantive law.  *See Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996) (citing *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)).  "The Connecticut Supreme Court has long held that a contractual condition in an insurance policy requiring an action to be brought within a particular time period is . . . valid and binding upon the parties."  *PHL Variable Ins. Co. v. Charter Oak Trust*, No. HHDCV106012621S, 2012 WL 2044416, at *4 (Conn. Super. Ct. May 4, 2012) (citing *Chichester v. New Hampshire Fire Ins. Co.*, 74 Conn. 510 (1902)). Though the contractual suit limitation is enforceable, it "does not operate as a statute of limitations."  *Monteiro v. American Home Assurance Co.*, 177 Conn. 281, 283 (1979). Accordingly, the interpretation of a contractual suit limitation is governed by Connecticut contract law, not statutory law.  *Id.*; *see also Holmes v. Safeco Ins. Co. of Am.*, No. CV126032368S, 2015 WL 2344939, at *15 (Conn. Super. Ct. Apr. 16, 2015).

The interpretation and construction of a written contract will present a question of law only if its language is "unambiguous and the intent of the parties can be determined from the agreement's face."  *Datto Inc. v. Braband*, 856 F. Supp. 2d 354, 366 (D. Conn. 2012).  A contract is ambiguous, and thus the province of the jury, if the "language of the contract is susceptible to more than one reasonable interpretation."  *Id.* at 364-65 (quoting *Harbour Pointe, LLC v. Harbour Landing Condominium Ass'n, Inc.*, 300 Conn. 254, 260-61 (Conn. 2011)).

The fact that the parties present two different interpretations of the contract is insufficient to establish that its language is ambiguous.  *Id.* at 365.  Rather, the court must confine itself to interpreting the contract in accordance with its ordinary meaning and usage.  The language will

only be ambiguous if it has "varying definitions in common parlance." *Id.* (quoting *Remillard v. Remillard*, 297 Conn. 345 (2010)).

The clause subject to competing interpretations provides:

> **Suits Against Us**
>
> No action can be brought against [Amica] unless there has been full compliance with all of the terms under Section I of this policy and **the action is started within two years after the date of loss**.

Pl.'s Ex. A at 15 (emphasis added). The parties agree that "two years after the date of loss" means two years from the date on which the Roberts learned or should have learned of the cracking in their basement walls. *See Parker v. Worcester Ins. Co.*, 247 F.3d 1, 5 (1st Cir. 2001) (predicting Connecticut law). The parties dispute the meaning of "the action is started." The Roberts assert that the instant action was started on October 27, 2014, when they filed their complaint in the district court. Amica contends that the instant action was not started until it was served with process on February 20, 2015. If the action was not started until February 20, 2015, the complaint should be dismissed as untimely.

The instant action is in federal court on the basis of diversity jurisdiction. The parties do not dispute that diversity jurisdiction is the only basis in which a claim on Amica's homeowners' insurance policy could be brought in federal court.

Diversity jurisdiction exists in order to ensure that non-resident litigants are free from the potential of local bias. *Guar. Trust Co. of N.Y. v. York*, 326 U.S. 99, 111 (1945). In an attempt to avoid the possibility of local bias in state courts, "Congress afforded out-of-State litigants another tribunal." *Id.* at 112. In so doing, Congress did not afford litigants "another body of law." *Id.* Rather, "[t]he source of substantive rights enforced by a federal court under diversity jurisdiction, it cannot be said too often, is the law of the States." *Id.*

When faced with an arguably procedural law regarding a state statute of limitations tolling provision, the Court held:

> There is simply no reason why, in the absence of a controlling federal rule, an action based on state law which concededly would be barred in the state courts by the state statute of limitations should proceed through litigation to judgment in federal court solely because of the fortuity that there is diversity of citizenship between the litigants.

*Walker v. Armco Steel Corp.*, 446 U.S. 740, 753 (1980).  In *Walker*, the Court held that a federal court sitting in diversity must look to state law to determine when an action is commenced.  *See id.*  The Court reached this conclusion notwithstanding the fact that Rule 3 of the Federal Rules of Civil Procedure defines commencement of a suit as when the complaint is filed in federal court.  Fed. R. Civ. P. 3.  The Court held that relying on the state law to define the commencement of a lawsuit did not conflict with Rule 3 because Rule 3 only "governs the date from which various timing requirements of the Federal Rules begin to run."  *Id.* at 751.

The Second Circuit has interpreted *Walker* to stand for the proposition that Rule 3 "does not apply when jurisdiction is based on diversity of citizenship."   *South v. Saab Cars USA, Inc.*, 28 F.3d 9, 12 n.4 (2d Cir. 1994).  Rather, "state law governs the effective date of commencement for limitations purposes."  *Id.*; *see also Diffley v. Allied-Signal, Inc.*, 921 F.2d 421, 423 (2d Cir. 1990) ("state law determines the related questions of what events serve to commence an action and to toll the statute of limitations") (internal citations and quotation marks omitted).  This construction comports with the Justice Marshall's assertion that "[t]he policies underlying diversity jurisdiction do not support such a distinction between state and federal plaintiffs, and *Erie* and its progeny do not permit it."  *Walker*, 446 U.S. at 753.

Neither a Connecticut state court nor a federal court applying Connecticut law has directly considered the issue of when a state law cause of action is deemed to commence in

federal court for the purposes of satisfying a contractual, non-statutory, suit limitations clause. Nevertheless, federal courts considering similar suit limitations under Connecticut state law have uniformly relied on the state law definition of "commence" to determine whether a suit was timely. *See Bacewicz v. NGM Ins. Co.*, No. 3:08-CV-1530 (JCH), 2010 WL 3023882, at *8 n.4 (D. Conn. Aug. 2, 2010); *Cocco v. Preferred Mut. Ins. Co.*, 637 F. Supp. 94, 95 (D. Conn. 1986).

In *Cocco*, a federal court sitting in diversity considered a contractual suit limitations provision that was mandated by Connecticut's Insurance Law. The parties agreed that the plaintiff had filed his complaint in federal court within the insurance policy's suit limitations period but failed to serve the defendant before the limitations period had run. *See Cocco*, 637 F. Supp. at 95. The court dismissed the complaint as untimely, holding that, "under Connecticut case law a suit is deemed commenced at the time of service." *See Cocco*, 637 F. Supp. at 95. The court refused to entertain the plaintiff's argument that compliance with Rule 3 of the Federal Rules of Civil Procedure effectively "commenced" the action and rendered his suit timely. *Id.* at 96-97. Simply put, the failure to comply with the state law requirements for commencing an action rendered plaintiff's claims untimely in federal court just as they would have been untimely if they had been brought in state court.

The fact that the *Cocco* court was construing a contractual suit limitation required by Connecticut Insurance Law does not alter the conclusion that a federal court sitting in diversity must look to state law to determine when a state law action is commenced. Whether it is evaluating a party's compliance with a contractual suit limitations provision or a statute of limitations, a federal court sitting in diversity must look to state law to determine when the action is "commenced." Such a conclusion is consistent with the Supreme Court's admonition against "[t]he operation of a double system of conflicting laws in the same State"—something the Court

8

saw as "plainly hostile to the reign of law." *Guar. Trust Co. of N.Y.*, 326 U.S. at 112.  An

insured's compliance with a suit limitation, whether it be contractual or statutory, should not

depend on the "fortuity that there is diversity of citizenship." *Walker*, 446 U.S. at 753.

  In the instant case, I must consider two conflicting interpretations of the Suits Against Us

provision of Amica's insurance policy and determine whether the language at issue is

ambiguous.  The Suits Against Us provision requires claims regarding the insurance policy to be

"started within two years after the date of loss."  Amica interprets the term "started" to require

commencement of a case in accordance with Connecticut state law.  Connecticut law requires

service of the summons and complaint on the defendant, Amica, before the contractual suit

limitations expires.  The Roberts, on the other hand, interpret the term "started" to permit

commencement of a case by filing the complaint in federal court.  They rely on Rule 3's

definition of "commence" as the filing of a complaint in federal court.  Fed. R. Civ. P. 3.

  I hold that the Roberts' interpretation of the Suits Against Us provision is unreasonable.

The parties do not dispute that the current action is a state law cause of action governed by state

substantive law.  Had the instant action been brought in state court, it would have been dismissed

as untimely.  Because I am sitting in diversity and am similarly bound to apply state law, I too

am required to dismiss the claims as untimely.  The Roberts should have reasonably

contemplated such a result because the only mechanism of enforcing the insurance policy was

based in Connecticut state law.  Thus, whether filed in state or federal court, they should have

reasonably understood that the action would be deemed to commence in accordance with the

state law definition of commencement of a suit.

  The fact that Rule 3 identifies the filing of a complaint in federal court as the

commencement of a suit for the purposes of the Federal Rules does not alter the interpretation of

a suit limitations provision that is based in state law.  Such a conclusion is bolstered by the fact that the Roberts cannot point to a single instance in which Rule 3 was used to define when a state law cause of action had commenced in a federal court.  That is because Rule 3 does not purport to identify when a state law cause of action commences in federal court.  The Roberts may not rely on Rule 3 in order to establish that they hold a reasonable interpretation of the term "started" in the Suits Against Us provision.

Because there is only one reasonable interpretation of the term "started" in the Suits Against Us provision, I hold that the term is unambiguous.  Under Connecticut state law, an action is not commenced until the defendant is properly served.  Because Amica was not served with a summons and the complaint until after the expiration of the suits limitations period, the complaint should be dismissed as untimely.  Accordingly, the Roberts' motion for reconsideration is without merit.

**IV.     Conclusion**

For the foregoing reasons, the Roberts' motion for reconsideration is denied.  Amica's motion to dismiss on the ground that the Roberts failed to comply with the contractual suit limitation was properly granted.  The clerk shall close the case.

So ordered.

Dated at Bridgeport, Connecticut, this 24th day of November 2015.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge